**RT. 30 AUTO & TRUCK SALES, LLC**　　　\*

　　　　　**Plaintiff,**　　　　　\*

v.　　　　　　　　　　　　　　\*　　**Case No. 1:22-cv-01537-RDB**
　v.

**CITY OF CRISFIELD**, *et al.*　　　\*

　　　　　**Defendants**.　　　　　\*

\*　　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

## DEFENDANTS' MEMORANDUM OF FACTS AND LAW IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT

Defendants, City of Crisfield ("the City"), Dean Bozman ("Mr. Bozman"), Barry Dize ("Mayor Dize") and Joyce Morgan ("Ms. Morgan") (collectively "Defendants"), by their attorneys, Kimberly L. Limbrick, Emily D. Jolicoeur and Crosswhite, Limbrick & Sinclair, LLP, pursuant to Rules 12(b)(1), 12(b)(6) and 56(c) of the Federal Rules of Civil Procedure, file this Memorandum of Facts and Law in Support of Defendants' Motion to Dismiss or, Alternatively, Motion for Summary Judgment, and state as follows:

### INTRODUCTION

In its Complaint, Plaintiff, Rt. 30 Auto & Truck Sales, LLC ("Rt. 30"), claims that Defendants violated its federal and state constitutional rights, tortiously interfered with its business and were negligent in refusing to permit Plaintiff to resume non-conforming use of property it purchased in the City of Crisfield. Specifically, Plaintiff complains that Defendants have unfairly precluded it from reopening the Pines Motel, which is situated on the property. Plaintiff seeks monetary damages as well as declaratory relief and injunctive relief related to its request to operate a motel on the property. As detailed below, Plaintiff's

Complaint must be dismissed or, alternatively, summary judgment must be entered in favor of Defendants.

## STATEMENT OF ALLEGATIONS AND PERTINENT UNDISPUTED FACTS

In its Complaint, Plaintiff seeks declaratory and injunctive relief (Counts I and II) permitting it to resume nonconforming use of property in the City of Crisfield by reopening the Pines Motel, which is situated thereon and was operated there by the previous owner. The Complaint also asserts claims under 42 U.S.C. § 1983 for violations of procedural and substantive due process rights pursuant to the Fifth and Fourteenth Amendments of the United States Constitution (Counts III, IV, VI). The Complaint further alleges violations of Articles 3, 19 and 24 of the Maryland Declaration of Rights (Counts V and VII). Finally, the Complaint alleges interference with future business expectancy and negligence against all Defendants (Counts VIII and IX). The salient allegations of Plaintiff's Complaint and pertinent facts are as follows.

## I.     The Property and Termination of Nonconforming Use

On or about May 24, 2021, Plaintiff purchased property comprised of two parcels located at 127A and 129A Somerset Avenue in Crisfield, Maryland.[1] The parcel at issue in this case is 127A, which is located within a R-2 Zoning District—a residential zone.[2] The Pines Motel is located on the parcel at 127A.[3] During a period before Plaintiff's purchase of the property, the Pines Motel was operated as nonconforming use of the land subject to the zoning provisions of the City Code.[4]

---

[1] See Deed attached as Exhibit A to the Complaint.

[2] Complaint ¶¶ 9, 11; Affidavit of Dean Bozman, attached hereto as Ex. 1.

[3] Complaint at ¶ 9.

[4] Bozman Affidavit, Ex. 1.

Article XIV of Chapter 112 of the City Code sets forth the provisions governing nonconforming uses of property located within the City. Section 112-121(B) states:

> It is the intent of this chapter not to encourage the survival of nonconformities. Such uses are declared by this chapter to be incompatible with permitted uses in the zones involved. It is further the intent of this chapter that nonconformities shall not be enlarged upon, expanded or extended nor be used as grounds for adding other structures or uses prohibited elsewhere in the same zone.[5]

Section 123 provides circumstances under which there can be continuation of the nonconforming use of land:

> Where, at the effective date of adoption or amendment of this chapter, lawful use of land exists that is made no longer permissible under the terms of this chapter as enacted or amended, such use may be continued, subject to the provisions of § 112-125, so long as it remains otherwise lawful, subject to the following provisions:
>
> A. No such nonconforming use shall be enlarged or increased or extended to occupy a greater area of land than was occupied at the effective date of adoption or amendment of this chapter.
>
> B. No such nonconforming use shall be moved, in whole or in part, to any other portion of the lot or parcel occupied by such use at the effective date of adoption or amendment of this chapter.
>
> C. If any such nonconforming use of land ceases for any reason for a period of more than 12 months, any subsequent use of such land shall conform to the regulations specified by this chapter for the zone in which such land is located.[6]

After Plaintiff attempted to obtain licensing and permits for the re-opening of the Pines Motel, City Inspector Bozman reviewed water and tax records pertaining to the motel that demonstrated that it had not been in operation for more than twelve months.[7] Thus, pursuant to the

---

[5] The pertinent sections of the City of Crisfield Code are attached hereto as Ex. 2.

[6] City Code, Ex. 2.

[7] Bozman Affidavit, Ex. 1.

zoning provisions of the City Code, the nonconforming use the land upon which the Pines Motel is situated was terminated.[8]  In accordance with his duty to enforce the provisions of the City Code, including the zoning provisions, Mr. Bozman executed a letter dated June 15, 2021, informing Rt. 30 that the nonconforming use of the property was discontinued and that any future use of the property must conform to the City's R-2 zoning regulations.[9]

On July 1, 2021, Plaintiff filed a Notice of Appeal.[10]  Chapter 112-131 of City's Zoning Ordinance provides the following regarding appeals:

> A. Appeals to the Board of Appeals concerning interpretation or administration of this chapter may be taken by any person aggrieved or by any official or officer of the City affected by any decision of the Zoning Administrator. Such appeals shall be taken within a reasonable time of such decision, not to exceed twenty (20) days, by filing with the Zoning Administrator and with the Board of Appeals a notice of appeal specifying the grounds thereof. The Zoning Administrator shall forthwith transmit to the Board all papers constituting the record upon which the action appealed was taken from.

> B. The Board of Appeals shall fix a reasonable time for the hearing of appeal, give public notice thereof as well as due notice to the parties in interest and hold the public hearing within 30 days from the filing of the notice of appeal. At least fifteen (15) days' notice of the time and place of such hearing shall be published in a paper of general circulation in the City and by posting at the property. At the hearing, any party may appeal in person or by agent or attorney. The Board of Appeals shall then decide the appeal within fifteen (15) days from the time of the hearing.[11]

---

[8] *Id.*

[9] *See* Letter dated June 15, 2021, attached as Ex. 3.

[10] Complaint ¶ 43.

[11] *See* City Code, Ex. 2.

In accordance with the above appeals procedures, a hearing on Plaintiff's appeal was scheduled for July 27, 2021.[12] Notice of hearing was provided to Plaintiff through its attorney,[13] but the hearing date was inconvenient for Plaintiff and its counsel.[14] Due to scheduling conflicts, a new date for the hearing was never scheduled and the hearing has not occurred.[15] Defendants Bozman, Morgan and Dize did not participate in the scheduling of the hearing.[16] Through the undersigned counsel, the City has offered to resume scheduling of the appeals hearing.

## II.  **Public Officials Dean Bozman, Joyce Morgan and Barry Dize**

Defendants Dean Bozman, Joyce Morgan and Barry Dize are City of Crisfield officials.  In 2021, Mr. Bozman was the Code Enforcement Inspector of the City of Crisfield's Office of Inspections ("City Inspector").[17] His position is set forth in the City of Crisfield Code, which requires that a City Inspector be appointed by the Mayor and confirmed by the City Council.[18] The City of Crisfield Code, Zoning §112-16, states that the zoning regulations were enacted for "the promotion of the public health, safety, morals and general welfare."[19] The City Inspector position involves receiving and examining applications for permits, determining compliance with

---

[12] Complaint ¶ 45.

[13] *See* Emails concerning scheduling, attached hereto as Ex. 4.

[14] Complaint ¶ 45.

[15] Complaint ¶ 46.

[16] Bozman, Morgan and Dize Affidavits, Exs. 1, 5, 6.

[17] Bozman Affidavit, Ex. 1.

[18] *Id.*

[19] City Code, Ex. 2.

and enforcing the City of Crisfield Code, including the zoning provisions and ordinances, and issuing permits and conducting inspections as necessary.[20]

Ms. Morgan is the Treasurer of the City of Crisfield.[21] The City Treasurer is appointed by the Mayor with the approval of the Council. The powers and duties of the City Treasurer are set forth in the City of Crisfield Charter, Article IV, § C6-2, and relate to fiscal and financial matters of the City.[22] The position of Treasurer includes the duty to "[a]scertain that all taxable property within the City is assessed for taxation" and "[c]ollect all taxes, special assessments, license fees, liens and all other revenues, including utility revenues, of the City and all other revenues for whose collection the City is responsible and receive any funds receivable by the City."[23]

Mayor Dize was elected mayor of the City of Crisfield and confirmed June 27, 2018. The powers and duties of the mayor are set forth in the City Code Charter, Article III, § C3-4.[24] The responsibilities of the mayor do not include the evaluation of compliance with or enforcement of the zoning provisions of the City Code, nor is the mayor involved in the scheduling of hearings on appeals of zoning matters.[25]

## ARGUMENT

## I.    Legal Standards

### A.    Standard for Dismissal For Lack of Subject Matter Jurisdiction for Failure to Exhaust Administrative Remedies.

---

[20] Bozman Affidavit, Ex. 1.

[21] *See* Affidavit of Joyce Morgan, attached hereto as Ex. 5.

[22] *See* City Charter, pertinent portions of which are attached hereto as Ex. 7, and Morgan Affidavit, Ex.5.

[23] *See* Charter, Ex. 7.

[24] *See* City Charter, Ex. 7, and Dize Affidavit,  Ex. 6.

[25] *See* Charter, Ex. 7; Dize Affidavit, Ex. 6.

Motions to dismiss for failure to exhaust administrative remedies are governed by Rule 12(b)(1) of the Federal Rules for Civil Procedure for lack of subject matter jurisdiction. *Clarke v. DynCorp Intern. LLC*, 962 F.Supp.2d 781, 786 (D. Md. 2013). "When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991), *cert. denied*, 503 U.S. 984, 112 S. Ct. 1667 (1992) (citation omitted). When considering a Rule 12(b)(1) motion, a court "regard[s] the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Clarke*, 962 F. Supp.2d at 786.

### B. Standard for Dismissal for Failure to State a Claim for which Relief Can Be Granted.

A complaint may be dismissed as a matter of law under Federal Rule of Civil Procedure 12(b)(6) if it lacks a cognizable legal theory or it alleges insufficient facts under a cognizable legal theory. *See Munger v. US*, 116 F. Supp.2d 672, 674 (D. Md. 2000), *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) and 2A J. Moore, Moore's Federal Practice, 12.08 at 2271 (2d ed.1982)). A complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). In other words, "while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference." *Brandford v. Shannon-Baum Signs, Inc.*, Civ. A. No. RDB-11-00836, 2012 WL 3542604 at * 2 (D. Md. August 15, 2012), *aff'd*, *Brandford v. Shannon-Baum Signs, Inc.*, 519 Fed. Appx. 817 (4th Cir. 2013 )(citation omitted). Thus, in order "to survive a motion to dismiss, the

Complaint must state a plausible claim for relief that permit[s] the Court to infer more than the mere possibility of misconduct based upon its judicial experience and common sense." *Coleman vs. Maryland Court of Appeals*, 626 F. 3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012) (internal quotations and citation omitted).

### C. Standard for Summary Judgment.

Pursuant to Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file … show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), that the plain language of Rule 56(c) "mandates the entry of summary judgment after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Id.* at 322. The Court in *Celotex* continued by stating that the moving party is entitled to a judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element. In that instance, "[t]he standard for granting summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

### II. Plaintiff Failed to Exhaust Its Administrative Remedies.

Maryland law recognizes three categories of administrative and judicial remedies:

> *First*, the administrative remedy may be exclusive, thus precluding any resort to an alternative remedy. Under this scenario, there simply is no alternative cause of action for matters covered by the statutory administrative remedy.
>
> *Second*, the administrative remedy may be primary but not exclusive. In this situation, a claimant must invoke and exhaust the administrative remedy, and seek judicial review of an adverse

administrative decision, before a court can properly adjudicate the merits of the alternative judicial remedy.

* * *

*Third*, the administrative remedy and the alternative judicial remedy may be fully concurrent, with neither remedy being primary, and the plaintiff at his or her option may [*645] pursue the judicial remedy without the necessity of invoking and exhausting the administrative remedy."

*Prince George's County v. Ray's Used Cars*, 398 Md. 632, 644-45, 922 A.2d 495, 502 (2007) (quoting *Zappone v. Liberty Life Insurance Co*., 349 Md. 45, 60-61, 706 A.2d 1060 (1998)).

Sometimes a legislature will set forth its intent as to whether an administrative remedy is exclusive, primary or concurrent, but "most often statutes fail to specify the category in which an administrative remedy falls."  *Zappone*, 349 Md. at 62, 706 A.2d at 1068. Although the "absence of express statutory language is a consideration in determining whether an administrative remedy is intended to be exclusive…[,]" the absence of express statutory language in determining whether an administrative remedy is intended to be primary is "entitled to little weight." *Ray's Used Cars*, 398 Md. at 645, 922 A.2d at 503.  "[W]hile there is no presumption that an administrative remedy is intended to be exclusive when a recognized alternative judicial remedy exists, there is a strong presumption that the administrative remedy is intended to be primary, and…a claimant cannot maintain the alternative judicial action without first invoking and exhausting the administrative remedy." *Zappone*, 349 Md. at 63, 706 A.2d at 1069.

In other words, "[w]here a legislature has provided an administrative remedy for a particular matter, even without specifying that the administrative remedy is primary or exclusive[,] [the Court of Appeals] has 'ordinarily construed the pertinent [legislative] enactments to require that the administrative remedy be first invoked and followed' before resort to the courts."

*Maryland Reclamation Assocs. v. Harford County*, 468 Md. 339, 354, 227 A. 3d 230, 238 (2020)

(quoting *Bd. Of Ed. for Dorchester Co. v. Hubbard*, 305 Md. 774, 786, 506 A.2d 625, 631 (1986)).

Therefore, "where a party's claim is enforceable initially by administrative action, the party must

fully pursue administrative procedures before obtaining limited judicial review." *Id*. at 394, 227

A.3d at 262 (internal quotations and citations omitted). The Court of Appeals explained the

rationale behind this requirement as follows:

> "The decisions of an administrative agency are often of a
> discretionary nature, and frequently require an expertise which the
> agency can bring to bear in sifting the information presented to it.
> The agency should be afforded the initial opportunity to exercise
> that discretion and to apply that expertise. Furthermore, to permit
> interruption for purposes of judicial intervention at various stages of
> the administrative process might well undermine the very efficiency
> which the Legislature intended to achieve in the first instance.
> Lastly, the courts might be called upon to decide issues which
> perhaps would never arise if the prescribed administrative remedies
> were followed."

*Green Healthcare Sols., LLC v. Natalie M. Laprade Md. Med. Cannabis Comm'n*, 254 Md. App.

547, 567-68, 274 A.3d 530, ___ (2022) (quoting *Arroyo v. Bd. Of Educ. of Howard County*, 381

Md. 646, 661-62, 851 A.2d 576 (2004)).

In zoning cases, "the general rule…remains that when administrative remedies exist…

they must be exhausted before other actions, including requests for declaratory judgments,

mandamus and injunctive relief, may be brought." *Josephson v. City of Annapolis*, 353 Md. 667,

681, 728 A.2d 690, 696 (1998); *see also Maryland Reclamation Assocs. V. Harford Co.*, 342 Md.

476, 495, 677 A.2d 567, 577 (1996)("We have held on numerous occasions that property owners

are not entitled to maintain declaratory judgment actions or actions for injunctions concerning the

validity of land-use ordinances as applied to their property, and that the validity of the ordinances

must be litigated in the statutorily prescribed administrative and judicial review proceedings.").

Maryland courts have repeatedly held that "under the Express Powers Act [of Md Code Ann., Local Government §§ 10-305 and 10-324], where a litigant is attempting to challenge, in a court proceeding, the application of a zoning regulation to his or her property, the litigant must first exhaust administrative remedies." *Maryland Reclamation Assocs.,* 468 Md. at 396, 227 A.2d at 263.[26]

As a municipality, the City of Crisfield is subject to Md. Code Ann., Local Government §§ 5-101, *et. seq.* Just as chartered counties are subject to the Express Powers Act, municipalities are subject to the express law making powers enumerated in §§ 5-201, *et seq.* Section 5-213 provides for the zoning authority of municipalities and authorizes municipalities to enact zoning regulations that are not in conflict with state law. Consistent with its express law making powers and state law, the City enacted the City of Crisfield Code for "the promotion of the public health, safety, morals and general welfare."[27] Chapter 112 of the City Code sets forth zoning regulations, including the establishment of the Board of Zoning Appeals (the "Board").[28] The Board is vested with the authority, *inter alia*, to "hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by the Zoning Administrator in the enforcement of this chapter."[29] Furthermore, the Board "shall fix a reasonable time for the hearing of appeal" and "decide the appeal within fifteen (15) days from the time of the hearing."[30] Only after such hearing is judicial review appropriate.[31]

---

[26] Chartered Counties are subject to the Express Powers Act. *Id*. at 394, 227 A.2d at 262.

[27] *See* City Code, Ex. 2 at § 112-16.

[28] *Id*. at § 112-128.

[29] *Id*. at § 112-129.

[30] *Id*. at 112-131; *see also* Complaint at ¶ 44.

[31] *See* City Code, Ex. 2 at § 112-141.

Defendant Dean Bozman, in his capacity as City Inspector,[32] reviewed Plaintiff's application for licenses and permits to reopen the motel on the property.[33]  The operation of a motel on the property constitutes nonconforming use, and section 112-123(C) of the City Code mandates that "[i]f any such nonconforming use of land ceases for any reason for a period of more than 12 months, any subsequent use of such land shall conform to the regulations specified by this chapter for the zone in which such land is located."[34]  Based on water meter reports and unpaid taxes, Mr. Bozman determined that the nonconforming use of the property as a hotel/motel at the subject property had ceased operations for a period of more than 12 months.  By letter dated June 15, 2021, he notified Plaintiff of the determination against allowing the resumption of non-conforming use, thereby denying Plaintiff's requests for the permits and licenses required to operate a motel on the property.[35]

 Mr. Bozman also informed Plaintiff of the right to appeal his determination.[36] On July 1, 2021, Plaintiff submitted a notice of appeal and requested a hearing.[37]  On July 9, 2021, Michael Sullivan, an attorney for the City, forwarded an email to Bob Thornton, Rt. 30's lawyer, notifying him that a hearing on his client's appeal had been scheduled for July 27, 2021.[38]  As noted in the Complaint, however, conflicts in schedules prevented the parties from agreeing on a hearing date,

---

[32] The City Inspector is also the Zoning Administrator.  *See* Bozman Affidavit, Ex. 1.

[33] Complaint ¶¶ 18, 22; *See also* June 15, 2021 letter of D. Bozman, attached hereto as Ex. 3.

[34] Complaint ¶ 33; *see also* City Code, Ex. 2.

[35] *Id.*; see also Complaint ¶¶ 28, 33.

[36] Bozman Letter, Ex. 3.

[37] Complaint at ¶¶ 43-44. *See also,* Notice of Appeal filed by attorney for Plaintiff, attached hereto as Ex. 8.

[38] Emails concerning scheduling, Ex. 4.

and a hearing did not occur before the filing of this lawsuit.[39]  Consequently, "fully adequate adjudicatory administrative remedies" were not exhausted, though the City has offered, through the undersigned counsel, to schedule a hearing on Plaintiff's appeal of the zoning decision now, even as this suit is pending.  *See Ray's Used Cars,* 398 Md. at 646, 922 A.2d at 503 (holding that plaintiffs' Complaint should have been dismissed because they were required to exhaust their administrative remedies and noting that plaintiffs still had the opportunity to exhaust their administrative remedies as the County had stipulated to that option).

**III.**   **Plaintiff's State Constitutional Claims Must be Dismissed for Failure to Exhaust Administrative Remedies.**

Under Maryland law, "issues concerning the validity of ordinances as applied to a particular property must be raised and initially decided in the administrative proceeding." *Maryland Reclamation Assocs.*, 342 Md. at 495, 677 A.2d 567, 577.  While an administrative agency or official has no authority to declare a statute unconstitutional "in the sense that an administrative agency or official is not empowered to render a declaratory judgment with respect to the constitutionality of a statute[,]" it "does not mean that an administrative agency or official, in the course of rendering a decision in a matter falling within the agency's jurisdiction, must ignore applicable law simply because the source of that law is the state or federal constitution." *Ins. Comm'r v. Equitable Life Assurance Soc'y of the United States,* 339 Md. 596, 615-16, 664 A.2d 862, 872 (1995).

Whether a "zoning regulation [] constitutes a taking of private property or otherwise constitutes a deprivation of due process…" is dependent upon a plaintiff's ability to "affirmatively demonstrate that the legislative or administrative determination deprives him of all beneficial use of the property…. But the restrictions imposed must be such that the property cannot be used for

---

[39] Complaint ¶¶ 45-46.

any purpose. It is not enough for the property owners to show the zoning action results in substantial loss or hardship." *Casey v Mayor of Rockville*, 400 Md. 259, 307, 929 A.2d 74, 84(2007). However, these factors cannot be evaluated by the courts "until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Id*. at 312, 929 A.2d at 95. In other words, "[e]ssential to the successful assertion of any regulatory takings claim is a final and authoritative determination of the permitted and prohibited uses of a particular piece of property." *Id*. at 308, 929 A.2d at 86. *See also Maryland Reclamation Assocs., Inc.,* 342 Md. at 502-06, 677 A.2d at 580-82 (concluding that a zoning ordinance does not deprive the landowner of any concrete property interests when the ordinance does not decide finally the permitted uses of a particular parcel of land); *Maryland Reclamation Assocs.,* 468 Md. at 398, 227 A.3d at 264 (noting that "few legal tenets have received greater acceptance than the principle that where a landowner alleges that the application of a zoning ordinance to his or her property is invalid or unlawful, all constitutional and non-constitutional claims must be raised within the context of the administrative proceeding").

In *Baltimore v. Seabolt*, property owners brought a declaratory action asserting that the application of a zoning statute to their property was unconstitutional, but they failed to exhaust the statutorily prescribed administrative remedy. 210 Md. 199, 123 A.2d 207 (1956). The trial court rendered a declaratory judgment that the zoning ordinance at issue resulted in a taking of the appellees' property without compensation and found that the property owners did not need to exhaust administrative remedies where a constitutional question was involved. *Id*. at 203, 123 A.2d at 208. The Court of Appeals, however, reversed and ordered that the declaratory judgment action be dismissed, holding that the property owners were required first to have the constitutional

issue resolved in the statutorily prescribed administrative and judicial review proceedings. *Id*. at 207, 123 A.2d at 210.

Similarly, in *Poe v. Baltimore City*, property owners asserted that the application of a zoning statute to their property was unconstitutional and brought a declaratory judgment action without having exhausted their administrative remedy. 241 Md. 303, 216 A.2d 707 (1966). The property owners argued "that they had no effective remedy before the Board [of Municipal and Zoning Appeals] because the Board is an administrative agency, not a court, and only a court can decide a question of constitutional law." *Id.* at 307, 216 A.2d at 709. The Court of Appeals flatly rejected the argument that the Board could not initially decide the constitutional issue, making clear that:

> It is particularly within the expertise of an administrative body such as the Board to marshal and sift the evidence presented in a hearing . . . and to make an administrative finding as to whether, on the evidence, the application of the ordinance to the property involved deprives the owner of any reasonable use of it. Such a finding is subject to court review on the question of constitutionality, as a matter of law.

*Id*. at 307-308, 216 A.2d at 709.

Recently, in *Maryland Reclamation Assocs. v. Harford County*, the Court of Appeals addressed whether, under Maryland's "exhaustion of administrative remedies jurisprudence, a landowner may withhold a claim alleging an unconstitutional taking arising from the application of a zoning regulation from the administrative agency consideration and present the claim to a jury in a separate action invoking the court's original jurisdiction." 468 Md. at 347, 227 A.3d at 234. The procedural history of the *Maryland Reclamation* controversy is lengthy and spanned the course of several years, but the salient facts are as follows: Maryland Reclamation contracted to purchase a tract of land in Harford County for the purpose of establishing a rubble landfill. *Id*. at

348-49, 227 A.3d at 235. The Harford County Council approved Maryland Reclamation's proposal and included it in the Harford County Solid Waste Management Plan. *Id*. at 349, 227 A.3d at 235. Maryland Reclamation closed the sale under the assumption that the property would be able to be used as a rubble landfill based upon its inclusion in the County's waste management plan. *Id*. However, just days after Maryland Reclamation settled on the property, a newly-elected Council adopted a series of zoning ordinances precluding use of the property to operate a rubble landfill. *Id*. at 349, 227 A.3d at 236. After several failed litigation attempts to circumvent the administrative process, Maryland Reclamation filed a separate suit alleging, for the first time, a state law claim for unconstitutional taking. Sifting through much legal precedent regarding the doctrine of administrative remedies, the Court of Appeals held that "in the context of a constitutional takings claim arising from the application of a zoning regulation, the property owner must raise its takings claims within the administrative agency proceeding prior to seeking judicial review or filing a separate legal proceeding." *Id*. at 347, 227 A.3d at 234. In so doing, the court confirmed that there is no "takings exception" to the exhaustion requirement under Maryland law. *Id*. at 399, 227 A.3d at 265. As a result, the Court of Appeals affirmed the dismissal of Maryland Reclamation's complaint.

In the instant case, the gravamen of Plaintiff's state constitutional claims is the allegation that the City of Crisfield's enforcement of its nonconforming use zoning regulation amounted to a taking in violation of Maryland's Declaration of Rights. Plaintiff seeks "immediate resolution" as to "[t]he constitutionality of actions taken by the City of Crisfield" in depriving "Plaintiff the use of the Property."[40] Plaintiff specifically alleges that the City's actions amount to a taking without just compensation under Articles 3, 19 and 24 of Maryland's Declaration of Rights. As

_____

[40] Complaint ¶¶ 58(e)-(f).

set forth above, however, in order for this Court to review these claims, there must first be a final and authoritative determination by the Board of Appeals.  To the extent Plaintiff makes a facial constitutional challenge to the City Code's nonconforming use regulation, such challenge is not properly reviewable until there is a final determination by the Board on the issue of whether the nonconforming use regulation is applicable under the circumstances of this case.  Until then, there can be no determination by the courts as to whether there has been an unjust taking in violation of Maryland's Declaration of Rights.[41]

There can be no dispute that Plaintiff failed to exhaust its administrative remedies. Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's state constitutional and non-constitutional claims. Thus, Counts V, VII, VIII and IX must be dismissed. To the extent Counts I and II for injunctive and declaratory relief are considered under state law, those Counts must also be dismissed for the reasons set forth above.

## IV.    Plaintiff's Federal Constitutional Claims Are Not Ripe for Review.

The Supreme Court has held that a plaintiff is entitled to maintain an action under 42 U.S.C. § 1983 without having exhausted available administrative remedies, *Felder v. Casey,* 487 U.S. 131, 146-147, 108 S. Ct. 2302, 2311 (1988), and that state law requirements that administrative remedies first be exhausted are generally inapplicable to §1983 actions.  *Patsy v. Florida Board of*

---

[41] Our research reveals no Maryland case law declaring unconstitutional the cessation of non-conforming use pursuant to provisions like section 112-123 of the City's Code.  In fact, under Maryland law, nonconforming uses are not favored and local ordinances must be strictly construed to effectuate the purpose of eliminating nonconforming uses. *Trip Assocs. v. Mayor & City Council*, 392 Md. 563, 573, 898 A.2d 449, 455 (2006); *County Council of Prince George's County v. E.L. Gardner*, 293 Md. 259, 268, 443 A.2d 114, 119 (1982).  The burden of proving that nonconforming use should be permitted is on the party seeking to gain the benefit of the nonconforming use.  *County Commissions of Carroll County v. Uhler*, 78 Md. App. 140, 145, 522 A.2d 942, 944 (1989).  The determination of whether that burden is met rests with the Board of Zoning Appeals.  *Id.*  The Board's decision regarding whether the party has met its burden "can be made only after hearing and determining the facts … assessing the credibility of witnesses and determining what inferences to draw from the evidence." *Id.*

*Regents,* 457 U.S. 496, 102 S. Ct. 2557 (1982); *Md.-Nat'l Cap. P. & P. Comm'n v. Crawford,* 307 Md. 1, 12-14, 511 A.2d 1079, 1084-1085 (1986). However, the ripeness of a claim is distinct from the issue of whether a claimant has exhausted all administrative remedies. Under the ripeness inquiry, "'[a] case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties.'" *Clayland Farm Enters. v. Talbot Cty.,* 672 F. App'x 240, 244 (4th Cir. 2016) (quoting *Miller v. Brown,* 462 F.3d 312, 319 (4th Cir. 2006) (internal citation omitted)).

Regarding specifically the ripeness of a takings claims pursuant to 42 U.S.C. § 1983, the gravamen of Plaintiff's claims in the instant case, "the plaintiff must demonstrate that: (1) the government entity charged with implementing the regulations in question has issued a 'final decision regarding the application of the regulations to the property at issue,' and (2) the plaintiff has sought and been denied just compensation through available and adequate state procedures for seeking just compensation." *Acorn Land, LLC v. Balt. Cty.*, 402 F. App'x 809, 813 (4th Cir. 2010)(quoting *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 186, 195, 105 S. Ct. 3108 (1985); *see also Casey v. Mayor of Rockville,* 400 Md. 259, 314, 929 A.2d 74, 97 (2007) (petitioner's takings claim was premature because there was no final denial of petitioner's demolition permit application); *Maryland Reclamation Assocs., Inc.*, 342 Md. at 506, 677 A.2d at 582 ("Until there is some governmental determination that [the landowner] cannot proceed to operate a rubble landfill under its state permit,…its [federal due process] action is not ripe for judicial decision.").[42]

---

[42] To the extent Plaintiff's Complaint asserts that the Defendants' actions were arbitrary and capricious and therefore violated Plaintiff's substantive due process rights, this claim, like Plaintiff's regulatory takings claim, is not ripe until Plaintiff has obtained a final decision from the government entity charged with implementing the regulations in question. *Acorn Land, LLC v. Balt. Cty.,* 402 F. App'x 809, 816 (4th Cir. 2010). Because there has been no final decision by the Board of Appeals, this claim must be dismissed.

In the case at bar, there has been no final decision by the Board of Appeals regarding Plaintiff's right to resume non-conforming use of the property. Thus, Plaintiff's federal constitutional claims are not yet ripe. Counts III, IV, VI therefore must be dismissed as premature. To the extent Counts I and II for injunctive and declaratory relief are considered under federal law, those Counts must also be dismissed as premature.

## V. Plaintiff's Non-Constitutional Claims Against the City Of Crisfield Are Barred by Governmental Immunity.

The long-standing and well-established law of Maryland provides that there can be no recovery against a County or municipality for injuries occasioned by their negligence in the exercise of functions that are essentially governmental in character. *E. Eyring & Sons Co. v. City of Baltimore*, 253 Md. 380, 382, 252 A.2d 824, 825 (1969)(and citations therein). Governmental immunity is derived from the doctrine of sovereign immunity, under which the State and state agencies are immune from lawsuits, unless the immunity has been waived by the General Assembly. *Burns v. Mayor and City Council of Rockville*, 71 Md. App. 293, 297, 525 A.2d 255, 257 (1987)(and cases cited therein); *see also Magnetti v. Univ. of Maryland*, 402 Md. 548, 556-57, 937 A.2d 219, 224 (2007)(doctrine is firmly embedded in Maryland and should not be diluted by the judiciary). While the immunity afforded counties and municipalities is not as broad as that afforded the State, governmental immunity attaches as a matter of law when a local government is engaged in a governmental, as opposed to a private or proprietary, function. *Burns*, 71 Md. App. at 298, 525 A.2d at 257; *Mayor and City Council of Baltimore City v. State, for use of Blueford*, 173 Md. 267, 271-72, 195 A. 571, 573-574 (1937).

In determining whether a function is private or governmental, the test is "whether the act performed is for the common good of all or for the special benefit or profit of the corporate entity." *Tadjer v. Montgomery County*, 300 Md. 539, 547, 479 A.2d 1321, 1325 (1984). The issue is

usually determined by the public policy underlying the act in the jurisdiction in which it takes place. *E. Eyring & Sons Co.*, 253 Md. at 383, 252 A.2d at 825 (citing *Mayor and City Council of Baltimore City v. State*, 173 Md. at 275, 195 A.2d 576). An act is governmental if it is sanctioned by legislative authority and is for the benefit and welfare of the public rather than municipal profit or a private interest. *See, e.g., E. Eyring & Sons Co.*, 253 Md. at 383, 252 A.2d at 825; *Tadjer*, 300 Md. at 547, 479 A.2d at 1324-25; *Spaw, LLC v. City of Annapolis*, 452 Md. 314, 359, 156 A.3d 906 (2017).

"It is well-settled that the adoption and administration of zoning procedures are an exercise of police power delegated to specific individual political subdivisions and municipalities of the State." *Casey*, 400 Md. at 279, 929 A.2d at 86; *see also Maryland Reclamation Assocs.*, 468 Md. at 389-90, 227 A. 2d at 259 (2020)(and cases cited)("As part of the exercise of its police powers, it is appropriate for a local government to adopt comprehensive zoning regulations addressing, *inter alia*, the types of uses that it will permit in a particular zoning district.); *White v. Spring*, 109 Md. App. 692, 697, 675 A.2d 1023 (1996), *cert denied*, 343 Md. 680, 343 Md. 678, 684 A.2d 455 (1996)("the creation of zoning policy is a matter reserved for the legislative body of government; it is neither normally an administrative nor a judicial function.") Likewise, the enforcement of zoning ordinances constitutes a governmental function for which counties and municipalities are afforded governmental immunity. *See E. Eyring & Sons Co.*, 253 Md. at 384, 252 A.2d at 826 (citations omitted); *Tadjer*, 300 Md. at 551, 479 A.2d at 1326; *Irvine v. Montgomery Co.*, 239 Md. 113, 118, 210 A.2d 359, 361 (1965)(and cases cited therein); *DiPino v. Davis*, 354 Md. 18, 48, 729 A.2d 354 (1999).

In the case at bar, Plaintiff's claims against the City are rooted in the enforcement of the City's zoning regulations, which apply "to all lands, buildings and properties lying within the

corporate boundaries of the City of Crisfield…."[43] In determining that governmental immunity applied to the claims in *E. Eyring & Sons Co.*, the Court of Appeals began by examining whether the City's acts were sanctioned by legislative authority. 253 Md. at 383, 252 A.2d at 825-26. As in that case, it is clear the City of Crisfield acted pursuant to legislative authority. Moreover, the zoning ordinance of the City Code, §112-16, clearly identifies the purpose of the regulations as "the promotion of the public health, safety, morals and general welfare."[44]

Based on the above, there can be no dispute that the City of Crisfield is entitled to governmental immunity in this case. Not only were the acts at issue clearly sanctioned by legislative authority and for the benefit and welfare of the public, but the adoption, administration and enforcement of zoning regulations also have been deemed under Maryland law to be governmental functions to which governmental immunity attaches. *See, e.g., E. Eyring & Sons Co.*, 253 Md. at 384, 252 A.2d at 826 (citing 7 McQuillin, Municipal Corporations (3d ed.) §24.507); *id.* at 385, 252 A.2d at 826-27; *Tadjer*, 300 Md. at 551, 479 A.2d at 1326 (issuance of permits is a governmental function); *Irvine v. Montgomery Co.*, 239 Md. at 118, 210 A.2d at 361 (1965)(and cases cited therein). Thus, the City of Crisfield is immune from tort liability in this lawsuit and Counts VIII and IX against it must be dismissed.

---

[43] City Code, Ex.2.

[44] *Id*. at §112-16.

**VI.**    **Defendants Owed No Duty that could be the Basis for Liability in this Case.**

The law of Maryland provides that the duty to enforce statutory law is a duty owed to the public generally, the breach of which is not actionable by or on behalf of a person who suffered damage as a result thereof. *Willow Tree Learning Center v. Prince George's County,* 85 Md. App. 508, 515, 584 A.2d 157, 161 (1991)(and cases cited therein). As discussed above, any and all actions taken by the Defendants in this case were pursuant to legislative authority, i.e., the Local Government Article of the Maryland Annotated Code and the City's zoning regulations. The duty of Defendants, therefore, was owed to the public generally, and not to any particular individual.

In *Willow Tree Learning Center*, the parents of a child who was fatally injured while using playground equipment at a child-care center sued the center, and the center sought contribution or indemnity from Prince George's County. The center claimed that the County, through its inspector, had failed properly to inspect the equipment and enforce the standards required by statute. 85 Md. App. at 510, 513-14, 584 A.2d at 158, 160. The Court of Special Appeals, however, affirmed the lower court's judgment as a matter of law in favor of the County and its inspector, concluding that the legislation at issue concerned the public safety and welfare, and did not create a duty owed specifically to the children of that particular day-care center. *Id.* at 515, 584 A.2d at 160. Noting that no tort duty exists between a county and a citizen absent a special relationship, the court found that neither the statute at issue nor the inspections conducted pursuant thereto created such a special relationship. *Id.* at 518, 584 A.2d at 162. The court held that "the County does not owe any individual duty of care merely by the enactment of a general ordinance requiring safety inspections, nor by the fact that it undertook inspections for safety violations." *Id.* at 515, 584 A.2d at 160-61. The Court of Special Appeals explained as follows:

> A proliferation of suits and judgments resulting therefrom against the State and/or local governments based upon duties or special relationships, perceived by the litigants to have

been created to run to them personally, as opposed to the public generally, might well cause the legislative branch to pause and reconsider the feasibility of continuing this type of regulatory activity. Any cessation or suspension of the Legislature's willingness to protect its citizens, we believe would be disproportionately injurious to the public in general. The creation of causes of action arising out of statutory schemes of regulations and inspections is a matter of policy and should be addressed, if at all, by the Legislature. It is not the function of the judiciary to make policy of this type.

*Id.* at 522, 584 A.2d at 164.

In the case at bar, all of the allegations in this case arise out of Defendants' alleged failures to enforce or administer zoning laws properly. Thus, the straightforward and long-standing law of Maryland establishes that Defendants did not owe a duty to Plaintiff the breach of which is actionable. The alleged actions by the City and individual Defendants all arose in relation to the zoning ordinance, and therefore from duties owed the public generally. Thus, Defendants cannot be sued by an individual entity like Rt. 30 based on claims of harm resulting from those acts, and Counts VIII and IX against all Defendants must be dismissed.

## VII.    **Plaintiff's Non-Constitutional Claims Against the Individual Defendants are Barred by Public Official Immunity.**

To further the public interest of encouraging public officials in the exercise of their discretionary duties, Maryland has adopted a form of qualified immunity for public officers. *Arrington v. Moore*, 31 Md App. 448, 464, 358 A.2d 909, 918 (1976). It is well established that a defendant who is a public official is immune from liability for "his [or her] tortuous conduct occur[ing] while he [or she] was performing *discretionary*, as opposed to *ministerial*, acts in furtherance of his [or her] official duties." *Bisel v. Deibel*, 128 Md. App. 670, 678, 739 A.2d 948, 952 (1999)(emphasis in original)(*quoting James v. Prince George's County*, 288 Md. 315, 323, 418 A.2d 1173, 1178 (1980), *superceded by rule on other grounds, Prince George's County v. Fitzhugh*, 308 Md. 384, 519 A.2d 1285 (1987)). Public official immunity is codified in Maryland under Md. Code Ann., Cts. & Jud. Proc. § 5-507(a)(1): "An official of a municipal corporation,

while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action."

### A.     The Individual Defendants Are Public Officials.

Whether a defendant is a public official who was undertaking a discretionary act at the time of the alleged tortuous conduct is a question of law for the court. *Artis v. Cyphers*, 100 Md. App. 633, 653, 642 A.2d 298, 308, *aff'd*, 336 Md. 561, 649 A.2d 838 (1994).  In *Duncan v. Koustenis*, 260 Md. 98, 105, 271 A.2d 547, 550 (1970), the Court of Appeals set forth guidelines for determining whether a person qualifies as a public official, including (1) whether the position was created by law and involves continuing and not occasional duties; (2) whether the defendant performs an important public duty; (3) whether the position calls for the exercise of some aspect of the sovereign power of the State; (4) whether the position has a definite term for which a commission was issued or a bond or oath is required. *Bisel,* 128 Md. App. at 678, 739 A.2d at 952 (*citing Duncan*); *see also James*, 288 Md. at 324, 418 A.2d at 1178.  The guidelines, however, are not conclusive, and each may be given greater or lesser emphasis, depending on the nature of the case.  In fact, even a defendant who does not meet most of the guidelines may be deemed a public official if his or her position involves the exercise of the sovereign power of the government. *Bisel*, 128 Md. App. at 678, 739 A.2d at 952.

The Court of Appeals addressed the issue of public official immunity in the context of a zoning and building dispute in *Bisel v. Deibel*, 128 Md. App. 670, 739 A.2d 948 (1999).  In that case, a landowner filed suit against a zoning administrator and planning director for alleged negligent misrepresentations regarding variances and exceptions for commercial buildings in residential areas.  In affirming the trial court's grant of summary judgment in favor of the

defendants, the Court of Special Appeals found that, in addition to their owing no duty to the landowners upon which liability could be based, the zoning administrator was a public official entitled to public official immunity. *Id.* at 680-1, 739 A.2d at 953.

In this case, each of the individual Defendants is a public official. Their positions were created by law, involve continuing rather than occasional duties, call for the performance of an important public duty, and involve the exercise of sovereign power. As the City Inspector, Mr. Bozman was appointed by the Mayor and approved by the City Council.[45] He was responsible for the enforcement of the City Code and ordinances, including inspections for compliance and interpreting code sections.[46] Given his job description, as well as the stated purpose of the zoning ordinance as "for the promotion of the public health, safety, morals or general welfare[,]" there can be no doubt that Mr. Bozman performs an important public duty in the exercise of an aspect of the sovereign power of the local government.

The same is true for Ms. Morgan. She is the Treasurer for the City of Crisfield. As the City Treasurer, Ms. Morgan was appointed by the Mayor and approved by the City Council.[47] Like Mr. Bozman's position, her post is full-time, involving continuing rather than occasional duties, and was created by law.[48] Ms. Morgan, as Treasurer, was responsible for the financial and fiscal matters of the City.

Similarly, Mr. Dize's position as the Mayor of the City of Crisfield involves continuing and not occasional duties, which involve the performance of an important public function.[49] His

---

[45] Bozman Affidavit, Ex. 1.

[46] *Id.*

[47] *Id.*

[48] Morgan Affidavit, Ex. 5.

[49] Dize Affidavit, Ex. 6.

position is an elected position and the powers and duties are set forth in the Charter of the City of Crisfield, § C3-4.[50]  Part of his duties include the approval or veto of ordinances. The zoning ordinance at issue in this case, was approved by Mr. Dize as Mayor on or about December 4, 2018. The intended purpose of the zoning ordinance, is "the promotion of the public health, safety, morals or general welfare."  Thus, there can be no doubt that, like Mr. Bozman and Ms. Morgan, Mr. Dize is a public official performing an important public duty prescribed by law and, in carrying out his official duties under the statute, exercises an aspect of the sovereign power of the local government.  Thus, each of the individual Defendants constitute public officials under Maryland law.

**B.**  **The Individual Defendants Were Performing Discretionary Duties.**

Once a defendant is determined to qualify as a public official, the next inquiry is whether his or her alleged wrongful act was committed in the exercise of discretionary or merely ministerial duties. Whether a public official who was undertaking a discretionary act at the time of the alleged tortious conduct is a question of law for the court.  *Artis v. Cyphers*, 100 Md. App. 633, 653, 642 A.2d 298, 308*, aff'd*, 336 Md. 561, 649 A.2d 838 (1994).  The Court of Appeals has defined "discretion" as "the power conferred upon [public officials] by law to act officially under certain circumstances according to the dictates of their own judgment or conscience . . . ." *Bise1*, 128 Md. App. at 680, 739 A.2d at 953 (*quoting Ashburn v. Anne Arundel County*, 306 Md. 617, 623, 510 A.2d 1078 (1986)(internal citations omitted)).  In contrast, ministerial duties are those actions in which "nothing is left to discretion" and the act is "absolute, certain and imperative, involving

---

[50] City Code, Ex. 2.

merely the execution of the task." *James*, 288 Md. at 327-30, 418 A.2d at 1179-80 (citations omitted).

In considering the issue of whether the zoning administrator in *Bisel* acted in a discretionary manner, the Court of Appeals looked to the job description in the county code, which stated that the administrator was to review building plans for compliance with the appropriate laws and regulations. *Bisel,* 128 Md. at 680, 739 A.2d at 953. Based on the statutory description of the position, the court found that that the zoning administrator was "required to exercise her judgment to make these determinations when issuing a permit," and that, therefore, the "position requires one to make a discretionary, not a ministerial decision." *Id.*

In this case, Plaintiff's allegations arise from the determination set forth in Mr. Bozman's letter of June 15, 2021 that a resumption of nonconforming use of the property would not be permitted. As City Inspector, Mr. Bozman was responsible for the enforcement of the City Code and ordinances, including inspections for compliance and interpreting code sections.[51] Thus, there can be no doubt that Mr. Bozman's position involved the exercise of discretionary, as opposed to merely ministerial, acts. Mr. Dize and Ms. Morgan were not responsible for the decision to terminate nonconforming use of the property,[52] and none of the individual Defendants were responsible for the scheduling of the appeal hearing.[53] However, to the extent the Complaint alleges as much, they too were exercising discretion just as was Mr. Bozman. Thus, there can be no dispute that the alleged tortious conduct of the individual Defendants occurred in the context of discretionary acts carried out in furtherance of their official job responsibilities.

---

[51] Bozman Affidavit, Ex. 1.

[52] Morgan and Dize Affidavits, Exs. 5 and 6.

[53] Bozman, Morgan and Dize Affidavits, Exs. 1, 5 and 6.

## C.    The Individual Defendants Acted Without Malice

The Maryland Code no longer recognizes an exception to public official immunity for gross negligence but requires that malice be proven in order to defeat immunity. *See, e.g.,* Md. Code Ann., Cts. & Jud. Proc., § 5-507. Thus, in order to overcome public official immunity, Plaintiff must demonstrate that Mayor Dize, Dean Bozman and Joyce Morgan acted with "actual malice." Actual malice means that an official "intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being the deliberately and willfully injure the [other person]." *Bord v. Baltimore County*, 220 Md. App. 529, 557, 104 A.3d 948 (2014). "Merely asserting that an act was done maliciously…does not suffice. To overcome a motion raising governmental immunity, the plaintiff must allege with some clarity and precision those facts which make the act malicious." *Elliott v. Kupferman*, 58 Md. App. 510, 528, 473 A.2d 960, 969 (1984). In its Complaint, Plaintiff has baldly asserted that the City's officials acted with malice, but no specific allegations of actions or inactions evidencing malice have even been alleged. Thus, Mr. Bozman, Ms. Morgan and Mayor Dize are entitled to public official immunity, and Counts VIII and IX against them must be dismissed.

## VIII.    Plaintiff's Constitutional Claims Against the Individual Defendants Are Barred By Qualified Immunity

"Qualified immunity shields government officials who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Hunter v. Town of Mocksville, N.C.*, 789 F.3d 389, 401 (4th Cir. 2015)(internal quotations omitted). The protection extends to "'all but the plainly incompetent or those who knowingly violate the law.'" *Raub v. Campbell,* 785 F.3d 876, 881 (4th Cir. 2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L. Ed. 2d 271 (1986)). "[O]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (internal quotations and

citations omitted). Thus, when a government actor has committed a constitutional violation, the actor is protected by qualified immunity so long as he or she acted reasonably, even if mistakenly. *Saucier v. Katz*, 533 U.S. 194, 205-06 (2001); *Waterman v. Batton*, 393 F.3d 471, 476-77 (4th Cir. 2005). The Supreme Court has explained the standard as follows:

> For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent…thus… officials can still be on notice that their conduct violates established law even in novel factual circumstances.'"

*Hope v. Pelzer*, U.S., 153 L. Ed. 2d 666, 122 S. Ct. 2508 (2002)(quoting *United States v. Lanier*, 520 U.S. 259, 270-271, 137 L. Ed. 2d 432, 117 S. Ct. 1219 (1997)). If there is no dispute about the conduct of the actor, "the question of whether that conduct was reasonable is one for the court to decide." *Raub v. Campbell,* 785 F.3d at 881.

In *Raub*, the plaintiff filed suit under 42 U.S.C § 1983 seeking damages and injunctive relief against, among other defendants, a local mental health evaluator, Campbell, for violating his Fourth Amendment and First Amendment rights. 785 F.3d at 878. The plaintiff claimed that Campbell unreasonably recommended that the plaintiff should be detained for a mental health evaluation. *Id*. at 882. Campbell filed a motion for summary judgment on the basis of qualified immunity, which the district court granted and the Fourth Circuit affirmed on appeal. The Fourth Circuit began by noting that qualified immunity operates to protect public officials from civil damages for alleged constitutional violations and "extends to 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* At 880-81 (citations omitted). In reviewing *de novo* the district court's order of summary judgment in favor of Campbell, the Fourth Circuit noted that the analysis of qualified immunity involves two inquiries: "(1) whether the plaintiff has established

the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Id*. At 881. In *Raub*, the Fourth Circuit based its decision on the second inquiry, concluding that "because Campbell's conduct was not proscribed by clearly established law, summary judgment on the basis of qualified immunity was proper." *Id*.

In so holding, the Fourth Circuit noted that entitlement to qualified immunity "turns on the objective reasonableness of [the official's] action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id*. at 882. Thus, the key question is "whether it would be clear to a reasonable official that his [or her] conduct was unlawful in the situation he confronted." *Id*. at 882 (internal quotations and citations omitted). The official is "entitled to summary judgment on the ground of qualified immunity if [he or she] can establish that reasonable officials could have believed that their actions were lawful in light of both clearly established law and the information that the [official] possessed at the time." *Pathways Psychosocial Support Ctr., Inc. v. Town of Leonardtown*, 223 F. Supp. 2d 699, 714 (D. Md. 2002)(internal quotations and citations omitted). The *Raub* court determined that Campbell was "entitled to qualified immunity on the ground that the unlawfulness (if any) of his conduct was not clearly established at the time he recommended [the plaintiff's] seizure." 785 F.3d at 884.

In the case at bar, to the extent Plaintiff's allegations against Mr. Bozman, Ms. Morgan and Mayor Dize amount to claims of violations of Plaintiff's constitutional rights, the individual Defendants are entitled to qualified immunity because any reasonable official would have believed that their alleged actions were lawful in light of clearly established zoning law regarding nonconforming use and the information each possessed at the time. The nonconforming use provision of the City Code states that, if non-conforming use "ceases *for any reason* for a period of more than 12 months, any subsequent use of such land *shall* conform ...." (emphasis added).

Thus, with evidence in the form of water and tax records that the nonconforming use of the property had ceased for a period of more than twelve months, they followed the directive of the zoning ordinance. Mr. Bozman based his letter of June 15, 2021 on data, which he believed was accurate, demonstrating a lack of use for more than twelve months.[54] To the extent Mayor Dize or Ms. Morgan were involved in the zoning determination, their understanding of the facts confirming non-use reasonably arose from the conclusions stated in Inspector Bozman's letter and the language of the zoning ordinance itself. Moreover, under Maryland law, nonconforming use is disfavored and local ordinances must be strictly construed to effectuate the purpose of eliminating nonconforming uses. *Trip Assocs. v. Mayor & City Council*, 392 Md. 563, 573 (2006); *County Council of Prince George's County v. E.L. Gardner*, 293 Md. 259, 268 (1982). Thus, given the language of the City zoning ordinance, Maryland law, and the data before them, there simply can be no dispute that each of the individual defendants' actions arose from a reasonable belief that their conduct was lawful. Consequently, Defendants Dize, Bozman and Morgan are entitled to qualified immunity, and they are therefore immune from the constitutional claims asserted against them in Counts III, IV, V, VI and VII.

## IX. <u>Count IV Must be Dismissed Because the Fifth Amendment Only Applies to the Federal Government.</u>

Finally, Plaintiff's claim asserting violations of its Fifth Amendment rights must be dismissed as the Fifth Amendment applies only to the federal government. *See Dunsenbery v. United States*, 534 U.S. 161, 167, 122 S.Ct. 694 (2002)("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law."); *see also Nash v. Montgomery Cty.,* No. GJH-20-1138, 2021 U.S. Dist. LEXIS 63464, at \*9 (D. Md. Mar.

---

[54] Bozman Affidavit, Ex. 1.

31, 2021)(dismissing plaintiff's claims of Fifth Amendment violations because the Fifth Amendment applies only to actions of the federal government and not to those of state or local governments). Thus, Count IV of the Complaint, which alleges that Defendants violated Plaintiff's Fifth Amendment rights by depriving Rt. 30 of its intended use of the property, must be dismissed.

## CONCLUSION

Based on the foregoing, Defendants request this Court to dismiss Plaintiff's Complaint for lack of jurisdiction and failure to state a claim, or, alternatively, grant summary judgment in favor of Defendants.

Respectfully submitted,

_____/s/_____

Kimberly L. Limbrick, Bar# 23367
Emily Duvall Jolicoeur, Bar #30024
CROSSWHITE, LIMBRICK & SINCLAIR, LLP
25 Hooks Lane, Suite 314
Baltimore, Maryland 21208
410-653-6890
410-653-6896 fax
kll@cls-law.com
edj@cls-law.com
*Attorneys for Defendants*