# EXHIBIT 7

CHARTER

OF THE

# City of Crisfield

SOMERSET COUNTY, MARYLAND

*As found in a 1980 Edition by General Code Publishers Corporation,*
*Supplemented to June 25, 1982*

(Reprinted November 2014)

The Department of Legislative Services
General Assembly of Maryland
prepared this document.

For further information concerning this document contact:

Library and Information Services
Office of Policy Analysis
Department of Legislative Services
90 State Circle
Annapolis, Maryland 21401

Baltimore Area: (410-946-5400)    Washington Area: (301-970-5400)
Other Areas: (1-800-492-7122)
TTY: (410-946-5401) (301-970-5401)
TTY users may also contact the
Maryland Relay Service to contact the General Assembly

E–mail: libr@mlis.state.md.us
Home Page: http://mgaleg.maryland.gov

The Department of Legislative Services does not discriminate on the basis of age, ancestry, color, creed, marital status, national origin, race, religion, gender, gender identity, sexual orientation, or disability in the admission or access to its programs, services, or activities. The Department's Information Officer has been designated to coordinate compliance with the nondiscrimination requirements contained in Section 35.107 of the Department of Justice Regulations. Requests for assistance should be directed to the Information Officer at the telephone numbers shown above.

referendum shall be suspended until approved by a majority of the qualified voters voting on the question at any election. Any ordinance or part thereof disapproved by the voters shall stand repealed. The provisions of this section shall not apply to any ordinance or part thereof passed under the authority of Sections C6–6, C6–13 and C6–20 levying property taxes for the payment of indebtedness, but the provisions of this section shall apply to any ordinance or any part thereof levying special assessment charges under the provisions of Sections C10–1 and C10–2. The provisions of this section shall be self–executing, but the Council may adopt ordinances in furtherance of these provisions and not in conflict with them.

Section C2–13. Filing of ordinances.

Ordinances shall be permanently filed by the Clerk–Treasurer and shall be kept available for public inspection.

Section C2–14.  Resolutions.

All resolutions shall be passed by a majority of affirmative votes of the Council members present and voting by roll call vote. All resolutions shall be attested by the City Clerk.  (Res. No. 399, 8–2–12.)

# ARTICLE III
# Mayor

Section C3–1.  Election; term.

The Mayor shall be elected for a term of four (4) years or until a successor is elected and has qualified. The newly elected Mayor shall take office on the second Monday following the election. (Res. No. 204, 6–3–87.)

Section C3–2.  Qualifications.

The Mayor must have resided in the city for at least two (2) years immediately preceding his election and must be a qualified voter of the city. (Amended 1–24–79 by Res. No. 146.)

Section C3–3.  Salary.

The Mayor shall receive an annual salary as set from time to time by an ordinance passed by the Council in the regular course of business; provided, however, that no change shall be made in the salary for any Mayor during the term for which he was elected. The ordinance making any change in the salary paid to the Mayor, either by way of increase or decrease, shall be finally ordained prior to the municipal election to elect the next succeeding Mayor and shall take effect only as to the next succeeding Mayor.

Section C3–4.  Powers and duties.

A.  The Mayor with the approval of the Council shall appoint all boards and commissions and a City Manager. The Vice President of the Council shall be Deputy Mayor. The City Manager shall recommend appointments for the heads of all offices, departments and agencies of the City government as established by this Charter or by ordinance, which appointments shall then be made by the Mayor with the approval of the Council. The City Manager shall also perform normal and routine, day–to–day responsibilities. All department heads shall serve at the pleasure of the Mayor and Council with the exception of the Chief of Police, as set forth in § C3–4H. All subordinate officers and employees of the offices, department and agencies of the City government shall be appointed and removed by the Mayor and City Manager, in accordance with the rules and regulations in any merit system which may be adopted by the Council.

B.  The Mayor and City Manager shall see that the ordinances of the city are faithfully executed and shall be respectively the chief and deputy executive officers and the City Manager shall be the head of the administrative branch of the city government.

C.  The City Manager shall report to the Council each year on the condition of municipal affairs and make such recommendations as he deems proper for the public good and the welfare of the city.

D.  The Mayor shall have the power to veto ordinances passed by the Council as provided in § C2–11.

E.  The Mayor shall annually prepare or have prepared a budget and submit it to the Council. The City Manager shall supervise the administration of the budget as adopted by the Council and shall supervise the disbursement of all moneys and have control over all expenditures to assure that budget appropriations are not exceeded.

F.  The Mayor and City Manager shall have such other powers and perform such other duties as may be prescribed by this Charter or as may be required of him by the Council not inconsistent with this Charter.

G.  The term of office of the City Manager shall coincide with the term of the Clerk–Treasurer. Upon recommendation by the Mayor after fourteen days prior notice to the City Manager stating the cause for the recommendation, the City Council may by majority action, remove the City Manager. The Council may also initiate action for removal with a majority decision at two successive regular meetings, and override a mayoral veto with a unanimous decision. Such action shall be taken in public session after the City Manager has been given the opportunity to respond orally or in writing. The Mayor may suspend the City Manager with pay after giving the notice until the Council acts upon the recommendation.

H.  Upon the initial appointment of the Chief of Police, in the manner set forth in § C3–4A., the Chief of Police shall serve a probationary term of two (2) years, during which the Chief of Police shall serve at the pleasure of the Mayor and Council. Upon the conclusion of the two (2) year probationary term, the Mayor with the approval of the council shall determine, within

their discretion, in a hearing open to the public, not less than fifteen (15) days following the conclusion of the probationary term cited herein, whether the probationary term shall be deemed completed or instead extended. If extended, the Chief of Police's probationary term shall be similarly reviewed and acted upon at a public hearing held within fifteen (15) days following the conclusion of the extended probationary term. If the Mayor with the approval of council retains the Chief of Police following the completion of the two (2) year probationary term, or any probation term authorized thereafter, the Chief of Police shall be terminated pursuant to only a showing of "cause." "Cause" is defined to mean incompetence, neglect of duty, malfeasance, misfeasance, insubordination, and material violation of the City's drug and/or alcohol use policies, as established from time to time.

If the Mayor decides that the Chief of Police should be terminated for cause, then the Mayor shall serve a written notice upon the Chief of Police specifying the grounds for termination. The Chief of Police shall have the opportunity to be heard in his own defense at a hearing before the Mayor and Council. The hearing shall not be open to the public and shall be held not less than five days, nor more than ten days, after the Police Chief is given notice of his termination. The hearing shall be conducted in accordance with such rules and procedures as may be proposed by the Mayor and adopted by the Council, from time to time. After the conclusion of the hearing, the Mayor and Council may privately deliberate before rendering a decision; provided, however, that a written decision must be rendered within five days from the conclusion of the hearing. In order to uphold the termination of the Chief of Police, the vote of the Mayor and at least three votes of Council must be in favor of termination. (Amended 12–13–84 by Res. No. 189; 9–30–99 by Res. No. 289; 9–27–12 by Res. No. 402.)

# ARTICLE IV
# Powers; Enforcement

Section C4–1.  Powers.

A.  *General powers*. The Council shall have the power to pass all such ordinances, not contrary to the Constitution and laws of the State of Maryland or this Charter, as it may deem necessary for the good government of the city; for the protection and preservation of the city's property, rights and privileges; for the preservation of peace and good order; for securing persons and property from violence, danger or destruction; and for the protection and promotion of the health, safety, comfort, convenience, welfare and happiness of the residents of the city and visitors thereto and sojourners therein.

B.  *Specific powers*. The Council shall have, in addition, the power to pass ordinances, not contrary to the laws and Constitution of this State, for the following specific purposes:

(1)  *Advertising*. To provide for advertising for the purposes of the city and for printing and publishing statements as to the business of the city.

so elected, who shall, within five (5) days of notice, qualify in the manner as regularly elected City officials.  (Amended 9–27–12 by Res. No. 400.)

Section C5–14.  Recount.

In a general or special election, a recount may be requested in accordance with the State Election Article. A recount in such an election shall be conducted in the manner provided in the State Election Article.  (Amended 9–27–12 by Res. No. 400.)

Section C5–15.  Violations and penalties.

Any person who fails to perform any duty required of him or her under the provisions of this Article or Chapter 42 of the Code, in any manner, willfully or corruptly violates any of the provisions of this Article or Chapter 42 of the Code, or does anything that will or will tend to affect fraudulently any registration, nomination, or City election shall be referred to the County's State's Attorney's Office for prosecution. Any person who is convicted shall cease to hold office or employment with the City. (Amended 9–27–12 by Res. No. 400.)

# ARTICLE VI
## Finance

Section C6–1. Appointment, term and compensation of Clerk–Treasurer. (See note (1))

There shall be a Clerk–Treasurer appointed by the Mayor with the approval of the Council for a term of four (4) years or until his successor is appointed and qualified. Compensation shall be determined by the Council. The Clerk–Treasurer shall be the chief financial officer of the city. The financial powers of the city, except as otherwise provided by this Charter, shall be exercised by the Clerk–Treasurer under the direct supervision of the Mayor and City Manager. (Amended 4–4–85 by Res. No. 190.)

Section C6–2.  Powers and duties of Clerk–Treasurer.

Under the supervision of the Mayor, the Clerk–Treasurer shall have the authority and shall be required to:

A.  Prepare, at the request of the Mayor, an annual budget to be submitted by the Mayor to the Council.

B.  Supervise and be responsible for the disbursement of all moneys and have control over all expenditures to assure that budget appropriations are not exceeded.

C.  Maintain a general accounting system for the city in such form as the Council may require, not contrary to state law.

D.  Submit, at the end of each fiscal year and at such other times as the Council may require, a complete financial report to the Council through the Mayor.

E.  Ascertain that all taxable property within the city is assessed for taxation.

F.  Collect all taxes, special assessments, license fees, liens and all other revenues, including utility revenues, of the city and all other revenues for whose collection the city is responsible and receive any funds receivable by the city.

G.  Have custody of all public moneys belonging to or under the control of the city, except as to funds in the control of any set of trustees, and have custody of all bonds and notes of the city.

H.  Do such other things in relation to the fiscal or financial affairs of the city as the Mayor or the Council may require or as may be required elsewhere in this Charter.

Section C6–3.  Bond of Clerk–Treasurer.

The Clerk–Treasurer shall provide a bond with such corporate surety and in such amount as the Council by ordinance may require.

Section C6–4.  Fiscal year.

The city shall operate on an annual budget. The fiscal year of the city shall begin on the first day of July and shall end on the 30th day of June in each year. Such fiscal year shall constitute the tax year, the budget year and the accounting year. (Amended 1–24–79 by Res. No. 147.)

Section C6–5.  Submission of budget to Council; public inspection.

The Mayor, on such date as the Council by ordinance shall determine, but at least twenty (20) days before the beginning of any fiscal year, shall submit a budget to the Council. The budget shall provide a complete financial plan for the budget year and shall contain estimates of anticipated revenues and proposed expenditures for the coming year. The total of the anticipated revenues shall equal or exceed the total of the proposed expenditures. The budget shall be a public record in the office of the Clerk–Treasurer and open to public inspection by anyone during normal business hours.

Section C6–6.  Amendment and adoption of budget.

The Council may insert new items or may increase or decrease the items of the budget. Where the Council shall increase the total proposed expenditures, it shall also increase the total anticipated revenues in an amount at least equal to such total proposed expenditures. The budget shall be prepared and adopted in the form of an ordinance. A favorable vote of at least a majority of the total elected membership of the Council shall be necessary for adoption.